No. 24-239

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

TERADYNE, INC.,

*Plaintiff-Appellant*,

v.

ASTRONICS TEST SYSTEMS, INC.

*Defendant-Appellee*

_____

On Appeal from the United States District Court
for the Central District of California
No. 2:20-cv-02713
Hon. George H. Wu

_____

## APPELLANT'S REPLY BRIEF

_____

Douglas H. Hallward-Driemeier
Matthew J. Rizzolo
Kathryn Thornton
ROPES & GRAY LLP
2099 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel: 202-508-4600

Evan Gourvitz
Michael Morales
Meredith Cox
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
Tel: 212-596-9000

James R. Batchelder
ROPES & GRAY LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303
Tel: 650-617-4000

*Counsel for Appellant
Teradyne, Inc.*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................1

ARGUMENT ..............................................................................................3

I.  BECAUSE DEFENDANT FAILED TO MEET ITS DOUBLE BURDEN, THE DISTRICT COURT ERRED BY GRANTING SUMMARY JUDGMENT ON THE AFFIRMATIVE DEFENSE OF FAIR USE............3

II.  FACTOR ONE—THERE ARE GENUINE DISPUTES OF MATERIAL FACT REGARDING WHETHER ATS'S COPYING AND USE IS TRANSFORMATIVE, INCLUDING UNDER THE SUPREME COURT'S *WARHOL* STANDARD ..........................................................................5

    A.  ATS's Commercial Use Weighs Against Fair Use ..............................6

    B.  The Parties Dispute Whether ATS's Copied Software Served the Same Purpose as Teradyne's Software .................................................6

    C.  Under *Warhol*, ATS's Use of Teradyne's Software is Not Transformative, and the First Factor Weighs Against It......................9

III.  FACTOR TWO—THERE ARE GENUINE DISPUTES OF MATERIAL FACT ABOUT THE CREATIVITY AND FUNCTIONALITY OF AND INVESTMENT IN TERADYNE'S CODE ................................................12

    A.  The Mere Fact That Computer Code is at Issue Does Not Favor Fair Use...............................................................................................12

    B.  Teradyne Introduced Evidence that its Code Was Creative, and That ATS Copied Far More than Necessary ..............................................12

    C.  Teradyne Introduced Undisputed Evidence of its Substantial Investments in the Code at Issue ......................................................14

IV.  FACTOR THREE—THERE ARE GENUINE DISPUTES OF MATERIAL FACT ABOUT THE AMOUNT AND IMPORTANCE OF COPIED CODE ...................................................................................................15

    A.  The District Court Improperly Failed to Consider the Teradyne Works Individually ...............................................................................15

    B.  There Are Material Disputes of Fact Over the Amount of the Teradyne Works That Were Copied....................................................17

    C.  There Are Material Disputes of Fact Over the Importance of the Content from the Teradyne Works that was Copied...........................19

V.  FACTOR FOUR—THERE ARE GENUINE DISPUTES OF MATERIAL
    FACT ABOUT THE RELEVANT MARKETS AND THE HARM TO
    THOSE MARKETS THAT THE DISTRICT COURT FAILED TO
    CONSIDER OR ADDRESS UNDER THE RELEVANT STANDARD.....22

    A.  There Are Material Disputes of Fact Over the Relevant Markets ......23

        1.  The Proper Market Is the Real-World Market for the Products
            Both Parties Offer, Not a Fictional and Non-Existent Market .23

        2.  The District Court Failed to Consider Potential and Derivative
            Markets......................................................................................26

    B.  There Are Material Disputes of Fact Over the Alleged Public Benefits
        of ATS's Copying ................................................................................28

CONCLUSION ....................................................................................................29

iii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
  598 U.S. 508 (2023)....................................................................*passim*

*Apple Inc. v. Corellium, Inc.*,
  No. 21-12835, 2023 WL 3295671 (11th Cir. May 8, 2023) .............................11

*Bell v. Wilmott Storage Servs., LLC*,
  12 F.4th 1065 (9th Cir. 2021) ...........................................................21

*Cambridge Univ. Press v. Patton*,
  769 F.3d 1232 (11th Cir. 2014) .........................................................16

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994).....................................................................22

*Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*,
  150 F.3d 132 (2d. Cir. 1998) ............................................................16

*Dr. Seuss Enterprises, L.P. v. ComicMix LLC*,
  983 F.3d 443 (9th Cir. 2020) ........................................................*passim*

*Google LLC v. Oracle Am., Inc.*,
  593 U.S. 1 (2021).....................................................................*passim*

*Harper & Row Publishers, Inc. v. Nation Enters.*,
  471 U.S. 539 (1985).......................................................................6

*Kelly v. Arriba Soft Corp.*,
  336 F.3d 811 (9th Cir. 2003) ...........................................................17

*Lanard Toys Ltd. v. Anker Play Prods., LLC*,
  2020 WL 6873647 (C.D. Cal. Nov. 12, 2020) .................................................21

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  387 F.3d 522 (6th Cir. 2004) .......................................................24, 25

*McGucken v. Pub Ocean Ltd.*,
  42 F.4th 1149 (9th Cir. 2022) .................................................5, 22, 29

*Monge v. Maya Magazines, Inc.*,
   688 F.3d 1164 (9th Cir. 2012) ...............................................................5

*Oracle Int'l Corp. v. Rimini St., Inc.*,
   2023 WL 4706127 (D. Nev. July 24, 2023) .................................9, 15

*Schultz v. Wal-Mart Stores, Inc.*,
   68 F. App'x 130 (9th Cir. 2003) ..........................................................14

*Sedlik v. Drachenberg*,
   2023 WL 6787447 (C.D. Cal. Oct. 10, 2023) ...................................27

*Sega Enterprises Ltd. v. Accolade, Inc.*,
   977 F.2d 1510 (9th Cir. 1992), *as amended* (Jan. 6, 1993).....................2, 11, 13

*Shakur v. Schriro*,
   514 F.3d 878 (9th Cir. 2008) ................................................................4

*Sony Computer Ent., Inc. v. Connectix Corp.*,
   203 F.3d 596 (9th Cir. 2000) ...................................................2, 11, 14

*Tauscher v. Phx. Bd. of Realtors, Inc.*,
   931 F.3d 959 (9th Cir. 2019) ................................................................5

*Toho Co. v. William Morrow & Co.*,
   33 F. Supp. 2d 1206 (C.D. Cal. 1998) ...............................................21

*Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*,
   996 F.2d 1366 (2d Cir. 1993) .............................................................16

*Wainwright Sec., Inc. v. Wall St. Transcript Corp.*,
   558 F.2d 91 (2d Cir. 1977) .................................................................16

*Wall Data Inc. v. Los Angeles Cnty. Sheriff's Dep't*,
   447 F.3d 769 (9th Cir. 2006) ...............................................12, 14, 15

*Warner Bros. Ent. Inc. v. RDR Books*,
   575 F. Supp. 2d 513 (S.D.N.Y. 2008) ...............................................16

*Worldwide Church of God v. Phila. Church of God, Inc.*,
   227 F.3d 1110 (9th Cir. 2000) .......................................................5, 27

**Statutes**

17 U.S.C. § 107(4) .................................................................22

28 U.S.C. § 1498(b) ................................................................8

## INTRODUCTION

In *Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 983 F.3d 443 (9th Cir. 2020), this Court reversed a grant of summary judgment in a case where the defendant had "created, without seeking permission or a license, a non-transformative commercial work that targets and usurps [plaintiff's] potential market." *Id*. at 461. The Court likewise should do so here. ATS copied Teradyne's copyrighted software for no purpose other than to enable ATS's competing digital test instruments to run programs written for Teradyne's instruments, allowing ATS to target and usurp Teradyne's market. And ATS did so even though it had several feasible alternatives to address the so-called "compatibility" issue it now raises. The fair use doctrine does not permit such conduct.

As the movant seeking summary judgment on an affirmative defense, ATS bore a heavy double burden that it failed to carry. In nevertheless granting summary judgment in ATS's favor, the district court erred by overlooking material factual disputes, usurping the jury's role to resolve others against Teradyne, and failing to give sufficient weight to the Supreme Court's latest fair use decision, *Warhol*, which clarified the standard for transformative use. On *de novo* review, this Court should reverse.

On factor one, Teradyne presented evidence that ATS copied the Teradyne Works for the very same purpose as Teradyne uses them—to allow newer digital

test instruments to run programs written for older instruments—enabling ATS's products to serve as direct competitive substitutes for Teradyne's products. While ATS argued that its copying was for a different purpose and therefore was transformative, the district court improperly resolved this substantive dispute in ATS's favor.

On factor two, Teradyne presented evidence that ATS copied far more material than necessary to allow its instruments to run programs written for older hardware, and that it had alternatives that would have involved little or no copying. Despite this Court's guidance in *Sony* and *Sega*, the district court improperly failed to consider or address that evidence, nor did it consider the evidence of Teradyne's substantial investment to develop the code ATS copied.

On factor three, Teradyne presented evidence that ATS copied the—most important parts—and in one case the entirety—of the Teradyne Works; that ATS's copying was much more extensive than it claimed; and that ATS included Teradyne's copied code throughout both the implementing and declaring code of ATS's software. The district court again failed to consider or give sufficient weight to this evidence, instead crediting ATS's evidence on the extent of its copying.

Finally, on factor four—the most important factor, which considers the effect that ATS's copying has on, and threat it poses to, the markets for the Teradyne Works—the district court erred by resolving multiple material factual

disputes against Teradyne and by ignoring Teradyne's evidence of harm to both its present and potential markets (most notably, for derivative works and the licensing of code to other industry members). Additionally, in concluding that ATS's copying served a public benefit, the district court improperly discounted Teradyne's evidence disputing ATS's supposed benefits and the risk of "catastrophic errors."

ATS's Opposition inaccurately denies that these facts are disputed (despite the evidence in the record) and material (despite the district court's reliance on its resolution of those issues to find fair use). In light of these disputes of material fact and the legal errors underpinning the district court's decision, Teradyne respectfully submits that this Court should reverse the district court's grant of summary judgment on ATS's fair use affirmative defense.

## ARGUMENT

## I. BECAUSE DEFENDANT FAILED TO MEET ITS DOUBLE BURDEN, THE DISTRICT COURT ERRED BY GRANTING SUMMARY JUDGMENT ON THE AFFIRMATIVE DEFENSE OF FAIR USE

To meet its double burden of summary judgment on an affirmative defense, ATS had to "establish beyond controversy every essential element" of fair use through evidence "so powerful that no reasonable jury would be free to disbelieve

it." *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008).[1]

As a preliminary matter, the district court erred in concluding this Court's standard for summary judgement on an affirmative defense "is of less-sure footing as applied to fair use" after *Google v. Oracle*, which "clarified that the ultimate question of whether facts bearing upon fair use actually demonstrate a fair use 'is a legal question for judges to decide.'" 1-ER-0030. This oversimplifies the Supreme Court's decision, which explained that "[a]pplying a legal 'fair use' conclusion may . . . involve determination of subsidiary factual questions," and that courts must "carefully appl[y] . . . fact/law principles" and "leav[e] factual determinations to the jury." *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 24–25 (2021). Rather than attempting to meet this double burden, ATS embraces the district court's conclusion that this standard is inapplicable. ATS Opposition Brief ("Opp. Br.") 28-29.

ATS also claims that "fair use is almost always decided on summary judgment," and that "this Court routinely affirms district courts that decide fair use

---

[1] Although ATS feigns surprise at the notion of "some kind of double burden" for summary judgment on the fair use affirmative defense, its counsel has expressly recognized this double burden elsewhere. *Apple Inc. v. Corellium, LLC*, No. 21-12835, Dkt. No. 30 at 6, Amicus Brief of Ralph Oman (11th Cir. Nov. 12, 2021) ("In considering the factors, it should not be overlooked that Corellium doubly bears the burden to prove that its copying of iOS constitutes fair use. It bears the burden as a matter of fair use law. And it bears the burden as the movant pursuant to Federal Rule of Civil Procedure 56.") (citing *Fox News Network, LLC v. TVEyes, Inc.*, 883 F.3d 169, 176 (2d Cir. 2018)).

4

on motions for summary judgment." Opp. Br. 7, 26. Yet this Court commonly overturns such decisions as well. *E.g.*, *McGucken v. Pub Ocean Ltd.*, 42 F.4th 1149 (9th Cir. 2022) (district court erred in granting summary judgment); *Dr. Seuss Enters. L.P. v. ComicMix LLC*, 983 F.3d 443 (9th Cir. 2020) (same); *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1168 (9th Cir. 2012) (same); *Worldwide Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110, 1115-20 (9th Cir. 2000) (same).

While fair use, like most issues, *may* be decided at summary judgment, no issue—including fair use—can be decided at summary judgment when, as here, the Court faces genuine disputes of material fact. And, of course, the record must be viewed in the light most favorable to the non-movant, with all reasonable inferences drawn in its favor. *E.g., Tauscher v. Phx. Bd. of Realtors, Inc.*, 931 F.3d 959, 962 (9th Cir. 2019).

As outlined in Teradyne's Opening Brief and below, the district court here failed to adhere to these fundamental principles, both by ignoring material factual disputes and improperly adjudicating others.

## II. FACTOR ONE—THERE ARE GENUINE DISPUTES OF MATERIAL FACT REGARDING WHETHER ATS'S COPYING AND USE IS TRANSFORMATIVE, INCLUDING UNDER THE SUPREME COURT'S *WARHOL* STANDARD

The first fair use factor considers two key issues: the commerciality and purpose of the defendant's use of the copied work. *Andy Warhol Found. for the*

5

*Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 525 (2023). On the former, there is no dispute, and on the latter, Teradyne introduced evidence that ATS's use served the same purpose as its own. Teradyne's Opening Br. ("Br.") 19-28.

## A. ATS's Commercial Use Weighs Against Fair Use

ATS acknowledges, as it must, that it copied Teradyne's software for commercial purposes. Opp. Br. 47. ATS argues that its commercial use "is of no consequence." *Id.* But, as the Supreme Court recently confirmed, "[t]he commercial nature of the use . . . is relevant," and must "be weighed against the degree to which the use has a further purpose or different character." *Warhol*, 598 U.S. at 510. Thus, ATS's commercial purpose weighs *against* fair use. *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985) ("[E]very commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright.") (citation omitted).

## B. The Parties Dispute Whether ATS's Copied Software Served the Same Purpose as Teradyne's Software

The second subfactor of transformativeness considers "whether and to what extent" the copied work "has a purpose or character different from the original" work—and, most notably, whether it could serve as a market "substitute" for the

original. *Warhol*, 598 U.S. at 528-29.[2] In *Warhol*, the Supreme Court explained that courts must guard against "an overbroad concept of transformative use, one that includes any further purpose, or any different character," as that would overly "narrow the copyright owner's exclusive right to create derivative works." *Id.*

Teradyne's evidence shows that ATS uses its copied code for the same purpose as Teradyne: so newer instruments can run test programs written for older Teradyne hardware. Br. 21-28. As ATS admitted in an interrogatory response, "[t]he T940 hardware uses LDE and DFL to emulate Teradyne's legacy products." Br. 9 (citing 2-ER-0079); *see also* 4-ER-0498 ¶¶22, 24. More particularly, Teradyne introduced evidence that it uses the code at issue to enable test programs written for its L-Series and M9-Series instruments to run on its newer Di-Series, and that ATS copied that code to likewise enable test programs written for Teradyne's L-Series and M9-Series instruments to run on its own newer hardware, and to encourage consumers to buy ATS's hardware with that copied software instead of Teradyne's competing hardware with its own software.[3] 1-ER-0013–14;

---

[2] ATS seeks to distract this Court about whether transformativeness is a question of law or fact. Opp. Br. 27-28. It is best considered a question of fact, Br. 23-24, but whether viewed as a factual question or a legal issue based on underlying findings of fact, this Court must assess the issue *de novo*.

[3] To the extent ATS implies that it developed this software "at DoD's behest" following Teradyne's purportedly deficient bids, *see* Opp. Br. 3, 42, 67, this allegation is unsupported and inaccurate. ATS copied the Teradyne software at issue years *before* the bids ATS identifies, *see* 4-ER-0498 ¶¶20-21, and ATS has

1-ER-0026; 4-ER-0631–32 ¶¶5-8; Br. 9-10 (citing 4-ER-0564 ¶14; 7-ER-1250–1251 ¶72; 18-ER-4066–67 ¶¶144-145; 19-ER-4359–60 at 196:25–197:7; 19-ER-4370–4371 at 46:19-47:3; 19-ER-4373–74 at 53:20-54:8).

ATS denies it created its copied software to compete with Teradyne, claiming instead that it was for "inter-vendor compatibility." Opp. Br. 40. But the parties agree that they sell competing products to the same customers seeking to run the same old test programs, which confirms that ATS's copied software is intended to replace Teradyne's copyrighted works in the market. In other words, Teradyne sells its Di-Series DTI product with software that can run old test programs; ATS sells its T940 product with its copied software for the same purpose; and customers generally choose one or the other. Br. 20 (citing 4-ER-0557 ¶1; 2-ER-0253–55 ¶¶12, 18; 19-ER-4388–407; 4-ER-0582–83 ¶¶50-51; 7-ER-1249–50 ¶¶68–69; 18-ER-4072–73 ¶¶161–162; 4-ER-0623 ¶6; 4-ER-0633 ¶13; 4-ER-0562 ¶10; 2-ER-0255, ¶18; 7-ER-1250–51 ¶72; 18-ER-4063–64 ¶¶138–139).

This factual dispute on the first factor precludes summary judgment. The jury should be presented with evidence and given the opportunity to decide the factual issues underlying the transformativeness question, including whether

---

not provided evidence corroborating any such DoD request or showing that the government has authorized its copying. *See* FER-0100 (withdrawing defense under 28 U.S.C. § 1498(b)).

ATS's use of the copyrighted works merely replaces Teradyne's works or if it truly adds something new or created some new expression, meaning, or message.

### C. Under *Warhol*, ATS's Use of Teradyne's Software is Not Transformative, and the First Factor Weighs Against It

In *Warhol*, the Supreme Court clarified and redefined transformativeness by focusing on "objective indicia of the use's purpose and character," such as "reasons for copying." *Warhol*, 598 U.S. at 549-50. Moreover, *Warhol* emphasized that "if an original work and secondary use share the same or highly similar purposes, and the secondary use is commercial, the first fair use factor is likely to weigh against fair use, absent some other justification for copying." *Id*. at 511. As discussed above, under the *Warhol* standard for transformative use, Teradyne's evidence that the Teradyne Works and ATS's copied software are used for the same purpose precludes summary judgment in ATS's favor. *Supra* Section II.B.

ATS tries to relegate *Warhol* to a footnote, claiming that the Supreme Court's latest fair use case should not apply here because it "did not involve a computer program." Opp. Br. 47, n.10. But *Warhol* is not work-specific, and courts in this circuit already have applied it to computer code, concluding that there is "nothing transformative" about copying plaintiff's software to create and test software "written to perform the same . . . tasks that a . . . developer updating [plaintiff's] software would undertake." *Oracle Int'l Corp. v. Rimini St., Inc.*, 2023 WL 4706127, at *76 (D. Nev. July 24, 2023).

ATS claims that, notwithstanding *Warhol*, the Supreme Court's earlier decision in *Google* is "case dispositive" on whether ATS's use of Teradyne's code should be deemed transformative. Opp. Br. 39 n.7. But in *Warhol*, the Court explained that the use it found to be transformative in *Google* was not for the purpose of direct competition with the copyright owner, but instead was in a "distinct and different computing environment" of the Android smartphone platform—a "new system created for new products." *Warhol*, 598 U.S. at 533 n.8.

Here, by contrast, ATS's digital test instrument and its built-in software (including Teradyne's copied code), considered individually or collectively, are not a "distinct and different computing environment" nor "a new system created for new products." They are simply substitutes for Teradyne's own test instrument and its own built-in software. Br. 22 (citing 4-ER-0557 ¶1; 2-ER-0253–55 ¶¶12, 18; 19-ER-4388–407; 4-ER-0582–83 ¶¶50-51; 7-ER-1249–50 ¶¶68–69; 18-ER-4072–73 ¶¶161–162; 4-ER-0623 ¶6; 4-ER-0633 ¶13; 4-ER-0562 ¶10; 2-ER-0255, ¶18; 7-ER-1250–51 ¶72; 18-ER-4063–64 ¶¶138–139). To the extent ATS claims its intended purpose was "***inter-vendor*** compatibility" and that such a purpose (to allow a competitor to offer compatible, directly competing products) should be deemed transformative, Opp. Br. 40 (emphasis added), ATS notably cites no fair use cases using that term.

And although ATS cites pre-*Warhol* cases in purported support its argument

10

on transformativeness, each involved "distinct and different computing environments," not directly competing products that serve as market substitutes for each other. In this case, unlike those, the products at issue can simply be swapped out for each other. *See Google*, 593 U.S. at 30 (copying API designed for use in desktop and laptop computers "only insofar as needed to include tasks that would be useful in smartphone programs" to "create a new platform that could be readily used by programmers"); *Apple Inc. v. Corellium, Inc.*, No. 21-12835, 2023 WL 3295671, at *7 (11th Cir. May 8, 2023) (virtual environment that "does not supersede iOS running on iPhones"); *Sony Computer Ent., Inc. v. Connectix Corp.*, 203 F.3d 596, 606-07 (9th Cir. 2000) (intermediate copying that enabled games to be played on computers rather than a console); *Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1522 (9th Cir. 1992), *as amended* (Jan. 6, 1993) (intermediate copying of console software to make compatible games for that console).

For the reasons noted above, the district court erred in ruling on summary judgment that (i) there was no genuine dispute of material fact on whether ATS used Teradyne's code for the same purpose as Teradyne itself; (ii) ATS's purpose was meaningfully transformative under the applicable legal standard; and (iii) ATS's use was sufficiently transformative to outweigh the commercial nature of that use, such that this factor as a whole favored ATS.

11

### III. FACTOR TWO—THERE ARE GENUINE DISPUTES OF MATERIAL FACT ABOUT THE CREATIVITY AND FUNCTIONALITY OF AND INVESTMENT IN TERADYNE'S CODE

As noted by the district court, "[t]his factor has not been considerably influential in the case law. The Ninth Circuit has expressly recognized as much." 1-ER-0040 (citing authorities). Even so, Teradyne introduced evidence that its code included creative content; ATS copied that content; ATS had no need to do so; and Teradyne made substantial investments in that code.

#### A. The Mere Fact That Computer Code is at Issue Does Not Favor Fair Use

ATS suggests that this factor favors fair use simply because the works at issue are computer code. Opp. Br. 31. But courts recognize that software is not relegated to second-class rights under the copyright laws. *E.g.*, *Google*, 593 U.S. at 23 ("Congress chose to place this subject matter within the copyright regime"); *Wall Data Inc. v. Los Angeles Cnty. Sheriff's Dep't*, 447 F.3d 769, 780 (9th Cir. 2006) ("copyright law nonetheless protects computer software").

#### B. Teradyne Introduced Evidence that its Code Was Creative, and That ATS Copied Far More than Necessary

While ATS claims that "[t]he computer programs here are precisely the kind addressed in *Google*," Opp. Br. 32, Teradyne produced evidence showing that the code ATS copied was not merely functional declaring code, and involved substantial creativity and investment. Br. 6-7, 32-33 (citing 2-ER-0269–89; 2-ER-0290–307; 2-ER-0226–29; 2-ER-0230–33; 2-ER-0086–136; 4-ER-0570–71 ¶27;

12

4-ER-0598–99; 4-ER-0636–39 ¶¶26-38; 20-ER-4743–48 ¶¶9-31; 20-ER-4742–48 ¶¶6-31; 20-ER-4754–58 ¶¶22-39). Teradyne also showed that ATS copied far more than necessary to achieve compatibility,[4] and that some of that code, including error codes and messages, was entirely non-functional and did not need to be copied at all—let alone verbatim—for ATS's software to run.[5] Br. 11 (citing 4-ER-0613; 14-ER-3123–24 ¶¶53-54; 7-ER-1233 ¶28, 7-ER-1280–82 ¶¶126-127, 7-ER-1311–12 ¶¶179-180, 7-ER-1325–26 ¶¶202-203, 7-ER-1338 ¶223).

Unlike *Sega*, where this Court found copying "was ***necessary*** in order to understand the ***functional*** requirements for [] compatibility," 977 F.2d at 1526 (emphasis added), here there was no need for ATS to copy the amount or types of code that it did to achieve functionality. *See also* Br. 29. Teradyne introduced evidence that ATS had alternatives to copying and alternatives that involved less copying, which still would have provided compatibility for ATS's new test instruments with customers' old test programs. Br. 29-31, 49-50 (citing 4-ER-0609; 7-ER-1368 ¶279, 7-ER-1378–81 ¶¶305-310; 19-ER-4458 at 151:6-19; 5-ER-0714 at 70:8-21). But instead of recognizing these disputed facts and viewing the

---

[4] Despite ATS's claim of waiver, Opp. Br. 35, Teradyne made this argument below. Br. 30.

[5] ATS claims that some of the copied content in its software was not copied into the executable source code sent to customers, and was "incidental" to ATS's supposed purpose. Opp. Br. 36 n.5. That factual dispute precludes summary judgment, and is an admission that ATS copied content unnecessary for compatibility.

evidence in the light most favorable to Teradyne, the district court improperly disregarded this evidence. *See* 1-ER-0039–41.

Although ATS claims, "[e]ngineers are not required to choose a less-efficient solution" to avoid copying, Opp. Br. 36, the case it cites refers to "the ***least*** efficient solution," not a ***less*** efficient solution, *Sony*, 203 F.3d at 605 (emphasis added), and it is in fact reasonable to require third parties to forgo perfect efficiency to avoid infringement.[6] Moreover, the degree of "efficiency" of the alternative solutions identified by Teradyne's expert presents a fact question not susceptible to summary judgment.

## C. Teradyne Introduced Undisputed Evidence of its Substantial Investments in the Code at Issue

Finally, as noted in its Opening Brief (Br. 32), although Teradyne introduced evidence that it made substantial investments in the code at issue—a fact this Court considers relevant to the second factor—*Wall Data*, 447 F.3d at 780—the district court did not consider this in its analysis.

Lacking a substantive response, ATS claims waiver because Teradyne "did not reference the [*Wall Data*] decision in its fair use brief below." Opp. Br. 37 n.6. That the *Wall Data* decision itself was not expressly cited in summary judgment briefing below is irrelevant. *E.g.*, *Schultz v. Wal-Mart Stores, Inc.*, 68 F. App'x

---

[6] Indeed, if "less efficient" was a get-out-of-jail-free card, infringement would always be justified, as the shortcut of copying will always be more "efficient" than the hard work of legitimate competition.

14

130, 132 n.1 (9th Cir. 2003) (finding no waiver where Wal-Mart made the arguments in district court and appellate briefing even though it failed "to cite Rule 16 and the relevant case law"). Moreover, ATS ignores that in Teradyne's Second Notice of Supplemental Authority, Teradyne raised the relevance of its significant investment in the copyrighted works to factor two, identifying *Rimini*, which itself cited *Wall Data* for the same proposition. FER-0004–05 (citing *Rimini*, 2023 WL 4706127, at *76 (finding factor two weighed against fair use where the copyrighted work was unique software that required significant investment to develop)).

Given all of the above, Teradyne respectfully submits that the district court erred in finding that factor two undisputedly favored a fair use.

## IV. FACTOR THREE—THERE ARE GENUINE DISPUTES OF MATERIAL FACT ABOUT THE AMOUNT AND IMPORTANCE OF COPIED CODE

The district court erred by failing to consider the works at issue individually, and by resolving disputed issues of fact concerning the amount and substantiality of ATS's copying. Br. 33-39. In opposition, ATS claims these issues are unimportant and immaterial. Opp. Br. 48-54. As explained below, neither claim is true.

### A. The District Court Improperly Failed to Consider the Teradyne Works Individually

ATS contends that the district court's failure to consider the works individually should be excused because "courts regularly decide fair use by

15

grouping the copyrighted works together." Opp. Br. 49. But because fair use involves a "highly fact-specific" inquiry, works must be assessed in a manner that allows the court to best assess the four fair use factors, including the amount and significance of the copied content. *Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1259, 1261 (11th Cir. 2014). Otherwise, the court has "no principled method of determining whether a nebulous cloud of infringements . . . should be excused by the defense of fair use." *Id.* at 1259.

ATS asserts that "the alleged infringement is one clear use: copying to enable inter-vendor compatibility," but offers no explanation for why, even if that were true, it justifies evaluating the Teradyne Works collectively. *See* Opp. Br. 50 n.13. This case is not like those where courts evaluated collectively individual works that comprise a larger book or television series. *See, e.g.*, *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 138 (2d. Cir. 1998) (*Seinfeld*); *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1372-73, 1381 (2d Cir. 1993) (*Twin Peaks*); *Warner Bros. Ent. Inc. v. RDR Books*, 575 F. Supp. 2d 513, 535 (S.D.N.Y. 2008) (*Harry Potter*). Nor is this a case where the content was uniformly copied from each work. *See Wainwright Sec., Inc. v. Wall St. Transcript Corp.*, 558 F.2d 91, 94 (2d Cir. 1977) (defendant copied abstract from each research report).

Here, a work-by-work analysis is especially important to give sufficient

16

weight to the fact that ATS copied most or all of some of the works at issue.[7] *E.g.*, *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (9th Cir. 2003) ("copying an entire work militates against a finding of fair use") (citation omitted). For example, ATS copied all of the M9-Series Diagnostics v1.1 API (one of the Teradyne Works). *See* Br. 35 (citing, *e.g.*, 4-ER-0511–12 ¶¶47-49, 12-ER-2908–13). ATS also copied all of the terM9.h file, which is a critical part of the M9-Series API Works, likewise weighing against fair use. *See* Br. 35–36 (citing, *e.g.*, 4-ER-0510 ¶45, 7-ER-1268–72 ¶¶111-117, 12-ER-2729–805). Thus, while Teradyne should not bear the burden on this factor, the district court's failure to consider the works at issue individually, most notably by taking note of and giving proper weight to the works that were copied in their entirety, was improper.

## B. There Are Material Disputes of Fact Over the Amount of the Teradyne Works That Were Copied

The amount that ATS copied from the Teradyne works is a "factual question[]," *Google*, 593 U.S. at 24, that remains in dispute. As noted in Teradyne's Opening Brief (Br. 37-38), ATS—the moving party—failed to identify any alleged undisputed facts as to the amount or proportion of copied code. *See, e.g.*, 4-ER-0557–85. Even so, the district court incorrectly shifted the burden on this issue to Teradyne—the non-moving party.

---

[7] As the district court noted, "[a]t least conceivably, this factor, in particular, could vary depending on the copyrighted work in question. However . . . Astronics has taken a 'blunderbuss' approach to this motion – all or nothing." 1-ER-0042.

Burdens aside, Teradyne offered evidence that ATS had copied substantial portions of certain Teradyne Works—including entire files and significantly more than necessary for compatibility. Br. 34-36 (citing, *e.g.*, 4-ER-0510–12 ¶¶45, 47-49; 4-ER-0516–19 ¶¶61-67; 4-ER-0521 ¶71; 12-ER-2729–805; 12-ER-2908–13; 13-ER-2994–97; 13-ER-3062–78; 12-ER-2845–74; 8-ER-1686–9-ER-1864; 14-ER-3123–24 ¶¶53-54; 14-ER-3150–58 ¶¶105-123; 14-ER-3182 ¶177). ATS's reliance on its own expert's analysis to assert that Teradyne alleges ATS "copied about 1% of the Asserted Works, approximately 1,000 lines of code" only serves to emphasize that there is a factual dispute. Opp. Br. 48-49 & n.12 (citing 18-ER-4157-58 ¶334, 8-SER-2065-66). Moreover, that analysis neither accurately describes Teradyne's allegations nor stands undisputed. *See* 14-ER-3153 ¶¶115, 122 (explaining Teradyne's source code directories do not correspond directly to Teradyne Works and ATS's source code directories fail to include certain files copied from Teradyne); *see also* 4-ER-510-25 ¶¶45-54, 58-79. Indeed, Teradyne's evidence shows that ATS copied more than 1,000 lines of code from just one of the sixteen Teradyne Works. *See* 12-ER-2729–805 (showing ATS copied 1,499 lines of code from terM9.h file from M9-Series Driver 3.1 API).

The district court improperly usurped the jury's role when it set aside this material factual dispute over the quantity of code ATS copied.

18

## C.  There Are Material Disputes of Fact Over the Importance of the Content from the Teradyne Works that was Copied

The importance of the copied code also remains in dispute. Though Teradyne introduced fact and expert testimony that the portions copied by ATS were important, and in some cases the heart(s) of the works at issue, *see e.g.*, 7-ER-1268-358 ¶¶111-254 (describing extent of ATS's copying); 4-ER-0636–38 ¶¶25-32 (explaining importance of code defining functions in M9-Series Works); 6-ER-1001–02 at 30:4-31:15; 20-ER-4754–58 ¶¶22-39; 20-ER-4742–48 ¶¶6-31, the district court disregarded this evidence. 1-ER-0041. This too is reversible error.

While ATS embraces the district court's ruling on this point, it contradicts itself in its Opposition—first claiming that "it is unclear why" "the copied material was 'important' or 'critical,'" and then stating that "if Astronics did not use [that material], the TPS[s] would not run."[8] Opp. Br. 53. At a minimum, this is an issue for the jury to resolve.

ATS also suggests that, even if it copied important portions of the Teradyne Works, that copying should be excused due to its transformative purpose. Opp. Br. 48-49, 51-52. However, this argument begs two questions: (1) whether ATS's

---

[8] This ignores the options ATS had to make older programs run on its hardware *without* copying Teradyne's code, or copying as much as it did, and the evidence Teradyne introduced on this issue. As noted in Teradyne's Opening Brief, these included "writing new TPSs, manually translating a customer's existing TPS, using software to translate customer TPSs, or creating a wrapper to provide an interface between customer programs and ATS's digital test instruments." Br. 50 (citing 7-ER-1368 ¶279, 7-ER-1378–81 ¶¶305-310).

19

copying was for a transformative purpose (it was not, *supra* Section II), and (2) whether ATS could have pursued that alleged purpose with far less or no copying (it could have, *e.g.*, Br. 30 (citing 4-ER-0609; 7-ER-1368 ¶279; 7-ER-1378–81 ¶¶305-10; 19-ER-4458 at 151:6-19; 5-ER-0714 at 70:8-21)).

ATS (like the district court) also attempts to sweep aside Teradyne's evidence that the content ATS copied included not only "declaring code," but also non-functional code that was unnecessary to copy for any purpose. Br. 11; *see also, e.g.*, 4-ER-0613 (citing 14-ER-3123–24 ¶¶53-54; 7-ER-1233 ¶28, 7-ER-1280–82 ¶¶126-127, 7-ER-1311–12 ¶¶179-180, 7-ER-1325–26 ¶¶202-203, 7-ER-1338 ¶223); 4-ER-0510–12 ¶¶45, 47-49; 4-ER-0516–19 ¶¶61-67; 4-ER-0521 ¶71; 7-ER-1293–94 ¶¶156-158; 7-ER-1320–28 ¶¶197-207; 7-ER-1329–34 ¶¶211-216; 7-ER-1337–39 ¶¶221-224; 7-ER-1354–55 ¶¶249-250; 8-ER-1686–9-ER-1864; 12-ER-2729–805; 12-ER-2806–22,12-ER-2823–36; 12-ER-2837–41; 12-ER-2845–74; 12-ER-2885–907; 12-ER-2908–13; 13-ER-2994–97; 13-ER-3062–78; 19-ER-4478–85; 2-ER-0137–51; 19-ER-4543-49 at lns. 10-473; 19-ER-4549–56 at lns. 482-945; 19-ER-4557–59; 19-ER-4445 at 112:19-25; 19-ER-4452–54 at 134:22-136:3, 134:22-136:25; 19-ER-4464–65 at 185:16-186:21; 5-ER-0868–70 at 101:1-103:10; 5-ER-0874–78 at 111:9-114:3, 114:22-115:10; 18-ER-4188–89 ¶391; 18-ER-4270–71 ¶498; 19-ER-4408–15; 19-ER-4492–93 ¶239; 19-ER-4494–541.

Finally, ATS relies on out-of-circuit cases to support the district court's

conclusion that "the law does not require that the secondary [user] may take no more than necessary." Opp. Br. 54. But courts in this circuit consider whether the copyist copied more than what was "necessary" as part of its factor three analysis. Br. 35 (citing *Kelly*, 336 F.3d at 820-21 (factor three weighs in favor of fair use if defendant "only copies as much as is necessary for his or her intended use"); *Toho Co. v. William Morrow & Co.*, 33 F. Supp. 2d 1206, 1217 (C.D. Cal. 1998) (factor three weighed against fair use because defendant's copying "cannot be considered necessary" for alleged transformative purpose). Here, ATS did not need to copy non-functional code from Teradyne, such as error codes and messages, comments, or copyright notices, but it nevertheless did so.[9]

Teradyne therefore respectfully submits that the district court erred in considering the works collectively, disregarding the parties' disputes on the quantity and importance of code copied, usurping the jury's role, and concluding factor three supported a finding of fair use.

---

[9] To the extent ATS claims its copying was *de minimis* (Opp. Br. 54), and cites the district court on this issue (1-ER-0043 at n.23), this is a "question of fact for the jury," *Lanard Toys Ltd. v. Anker Play Prods., LLC*, 2020 WL 6873647, at *24 (C.D. Cal. Nov. 12, 2020), and "[w]holesale copying or reproduction of another's protected work," which is the case for at least one of the Teradyne Works, "by definition cannot be *de minimis* copying," *Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1078-80 (9th Cir. 2021).

## V. FACTOR FOUR—THERE ARE GENUINE DISPUTES OF MATERIAL FACT ABOUT THE RELEVANT MARKETS AND THE HARM TO THOSE MARKETS THAT THE DISTRICT COURT FAILED TO CONSIDER OR ADDRESS UNDER THE RELEVANT STANDARD

The fourth and most important factor considers "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). Factor four considers both *actual* harm to the value of the copyrighted work resulting from the defendant's copying and use, and *potential* harms if the copying and use became widespread. *Dr. Seuss*, 983 F.3d at 458. Potential harm exists if such widespread copying "would result in a substantially adverse impact on the *potential market for the original*" and "*the market for derivative works*." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994) (emphases added, citations omitted). Harm is a "factual question[]," *Google*, 593 U.S. at 24, and the burden is on ATS, "as the proponent of the affirmative defense of fair use," to "bring forward favorable evidence about relevant markets." *McGucken*, 42 F4th at 1163 (quoting *Dr. Seuss*, 983 F.3d at 459); *see Campbell*, 510 U.S. at 590.

Here, the district court (i) inappropriately excused ATS's failure to carry its burden, (ii) erroneously found the definition of the relevant market to be a question of law,[10] (iii) incorrectly defined the appropriate market as non-existent, and (iv)

---

[10] Defining a market is a factual question for the jury, not a question of law. Br. 43-44. But either way, the district court's findings on this issue are reviewed *de novo*

incorrectly ruled that widespread copying would benefit the public. In doing so, the district court committed multiple legal errors and wrongly resolved several material factual disputes.

### A. There Are Material Disputes of Fact Over the Relevant Markets

#### 1. The Proper Market Is the Real-World Market for the Products Both Parties Offer, Not a Fictional and Non-Existent Market

Teradyne introduced evidence of actual monetary harm to the value of its copyrighted works—in the form of both lost profits and price erosion—that it has suffered already due to ATS's copying. *E.g.*, Br. 46 (citing 17-ER-3853–91 ¶¶227-369). Teradyne also introduced evidence on the risk of future harm posed by ATS's copying, including to (i) its real-world market and (ii) the derivative markets for the Teradyne Works, such as the opportunity to license that software. *E.g.*, Br. 48 (citing 4-ER-0627 ¶18). Such evidence belies ATS's assertion that its copying and use of Teradyne's code "does not bring[] to the marketplace a competing substitute for the original." Opp. Br. 55.

ATS admits that it does not sell its copied software separately from its hardware, Opp. Br. 47 ("Astronics provides it to customers at no extra charge"). And ATS does not dispute Teradyne's evidence of lost profits and price erosion.[11]

---

and, for the reasons described in Teradyne's Opening Brief and further below, should be reversed.

[11] ATS asserts that DoD "found Teradyne's new hardware option deficient" and implies that this was both undisputed and relied upon by the district court to find

*See, e.g.*, 17-ER-3853–91 ¶¶227-369. But ATS argues that the relevant market is not for digital test equipment with pre-installed software (the real-world market in which both parties compete) or for licensing such software. Opp. Br. 5, 55-60. Instead, ATS asserts the relevant market is for "Compatibility Software," a category so narrowly defined that it is only offered with and runs only on ATS's hardware, thereby allegedly precluding any competition or harm to competition. *Id.* & n.16. Not so.

The relevant market here is the one where both parties' software is purchased by consumers—*i.e.*, installed in their respective competing hardware products. That is the market where Teradyne showed it has been harmed, and will continue to be harmed, by ATS's infringement. Br. 41-44 (citing 4-ER-0614; 4-ER-0674–75 at 298:22-299:1; 5-ER-0702 at 53:2-9; 5-ER-0706 at 60:18-20; 4-ER-0557 ¶1; 2-ER-0253–55 ¶¶12, 18; 19-ER-4389–407; 4-ER-0582–83 ¶¶50-51; 7-ER-1249–51 ¶¶68–69, 72; 18-ER-4063–64 ¶¶138-139, 18-ER-4072–73 ¶¶161-162; 4-ER-0623 ¶6; 4-ER-0633 ¶13; 4-ER-0562 ¶10; 2-ER-0255 ¶18).

ATS's Opposition relies on a Sixth Circuit case, *Lexmark*, for the proposition that the relevant market should be the (non-existent) market for the software alone. Opp. Br. 61-62. In *Lexmark*, the copyrighted software at issue was

---

ATS's use transformative. Opp. Br. at 42. Not so—the district court never made any such finding or relied on this allegation, and Teradyne presented evidence that its new Di-Series DTI is an effective replacement for its older instruments. *E.g.*, 4-ER-0623-35 ¶¶6, 12.

Lexmark's Toner Loading Program, a software program embedded on a chip in Lexmark's toner cartridges that measured the amount of toner remaining in the cartridge, and without which the toner cartridges would not function. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 529-30 (6th Cir. 2004). The accused infringer sold a microchip with code that cartridge remanufacturers could use to replace Lexmark's microchip. *Id.* In its fair use analysis, the court considered the relevant market for factor four to be the market for the Toner Loading Program itself, rather than for toner cartridges. *Id.* at 544-45.

*Lexmark* is both non-binding and inapposite. In *Lexmark*, the software at issue was installed on a separately saleable chip. *Id.* at 530. Here, both parties offer the software at issue installed on digital test instruments and the parties' software functions with their respective instruments as a single unit. In *Lexmark*, the alleged infringer did not offer a "substitute" for Lexmark's toner cartridges (or indeed, anything sold by Lexmark), but a chip that was sold to third parties. *Id.* at 530, 544-45. Here, by contrast, Teradyne and ATS directly compete, and ATS offers its infringing digital test instruments as direct substitutes for Teradyne's. Br. 45-47.

Even *if* the market here were for software alone rather than hardware with that software installed, the district court's acceptance of ATS's disputed and narrow definition of the market for its copied software, 1-ER-0045, was inappropriate. The district court should have considered that market to include

25

software that allows **any** digital test instruments to run programs written for older Teradyne hardware,[12] rather than limiting the market to software that allows only **ATS's** digital test instruments to run such programs. Teradyne's copyrighted software and ATS's copied software already directly compete in that market (sold together with/installed on their respective hardware), and, again, Teradyne introduced evidence that ATS's copying has caused and will continue to cause harm to Teradyne in that market. *See, e.g.*, 17-ER-3853–91 ¶¶227-369; 4-ER-0627 ¶18; *see also Google*, 593 U.S. at 35 ("'verbatim copying of the original in its entirety for commercial purposes' may well produce a market substitute" for a work) (quoting *Campbell*, 510 U.S. at 591).

### 2. *The District Court Failed to Consider Potential and Derivative Markets*

As for the harm to potential markets, including potential markets for derivative works, the district court failed to consider those markets or the evidence Teradyne submitted on them, except to dismiss "lost licensing opportunities" as "a 'circularity'" and "not all that influential of a consideration." 1-ER-0044–47, 1-ER-0045 at n.24. But the licensing of Teradyne's code is a potential market for which the district court should have considered the harm caused or likely to be

---

[12] ATS concedes that this market exists. Opp. Br. 56 ("customers buy [ATS's copied software] only if they previously purchased the Asserted Works, used them to write TPSs for Teradyne hardware, and need to replace that obsolete hardware with something different").

26

caused by ATS's copying, Teradyne's evidence of that harm, and the disputes of material fact concerning such harm. *E.g.*, *Dr. Seuss*, 983 F.3d at 460 (a "relevant derivative works market includes 'those that creators of original works would in general develop or license others to develop'" (citation omitted)); *see Sedlik v. Drachenberg*, 2023 WL 6787447, at *5 (C.D. Cal. Oct. 10, 2023) (finding "triable issue as to whether there is a market" for derivative use).

ATS argues in its Opposition that "Teradyne has never licensed the copied code for use with another vendor's implementation" and cites an out-of-circuit, non-binding case for the proposition that "[t]his weighs in favor of fair use." Opp. Br. 56-57 (citing *Blanch v. Koons*, 467 F.3d 244, 258 (2d Cir. 2006)). But this Court has never espoused such a restrictive view of "potential markets" under the fourth factor—indeed, it has gone so far as to say that potential markets include situations where "an author . . . had disavowed any intention to publish his work during his lifetime," particularly because a copyright owner "has the right to change his mind." *Worldwide Church of God*, 227 F.3d at 1119.

The district court therefore erred when it failed to consider Teradyne's evidence of harm to potential and derivative markets, and disregarded licensing as a "circularity," ignoring evidence that software licensing is routine. *See, e.g.*, Br. 48 (citing 4-ER-0627 ¶18); 1-ER-0044–49.

27

**B.     There Are Material Disputes of Fact Over the Alleged Public Benefits of ATS's Copying**

Finally, ATS praises the district court's "public benefits" analysis. Opp. Br. 66-71. But as explained in Teradyne's Opening Brief (Br. 49-52), the district court's analysis here wrongly merged its consideration of the public benefits of copying with its obligatory consideration of the consequences of the defendant's infringing conduct becoming widespread, and turned that analysis on its head.

At the district court, ATS argued that its copying would provide consumers with increased choice, lower prices, and even safety. ATS presented no evidence from consumers or members of the public, instead supporting this argument with nothing but attorney argument and a self-serving, speculative declaration[13] from an ATS executive. *See* 6-ER-1160–61; 1-SER-6 at ¶¶6-7. Teradyne countered with testimony from both fact and expert witnesses disputing all of these claims. Br. 50-51 (citing 7-ER-1368 ¶279, 7-ER-1378–81 ¶¶305-310; 4-ER-0633–34 ¶¶15-19; 4-ER-0623 ¶7; 4-ER-0625–27 ¶¶13-18; 4-ER-0628 ¶21). Instead of letting the jury resolve the factual issues presented by this contradictory evidence, the district court simply accepted ATS's arguments, and inaccurately claimed that Teradyne

---

[13] For example, ATS's president speculates that the failure of a TPS to properly execute could have a "potentially catastrophic result" and that "[l]ives can be lost" (1-SER-6 at ¶¶6-7), but, as Teradyne's executive John Wood explained, any such risk is "vanishingly small," and mitigated by rigorous user validation and certification processes. 4-ER-0623-28 ¶¶7, 9-21; *see also* Br. 50-51.

did not dispute these issues. 1-ER-0046–49.

Compounding the error and flipping the fourth factor analysis on its head, the district court found—and ATS now argues—that the benefits of widespread unauthorized copying weigh in favor of fair use. 1-ER-00046 at n.26; Opp. Br. 69-70. But the law on this factor expressly states that one must consider the *harm* to the *copyright owner*, not *benefit* to the *public*, if the copying at issue were to become widespread or universal. *E.g.*, *McGucken*, 42 F.4th at 1163; *Dr. Seuss*, 983 F.3d at 461.[14]

Teradyne therefore respectfully submits that the district court erred in ignoring ATS's burden, mis-defining the relevant market, improperly deciding factual disputes concerning harm to that market and any public benefit, and failing to consider harm to potential or derivative markets or if the copying at issue became widespread.

## CONCLUSION

For the reasons set forth above, Teradyne respectfully submits that the district court's order granting summary judgment of fair use should be reversed, and the case remanded for trial.

---

[14] If that were not the case, the public interest analysis would swallow the fair use analysis and render the fourth factor a nullity, as copying is cheaper than legitimate competition, and allows for lower prices that please the public.

29

Date: August 7, 2024            Respectfully submitted,

*s/ Matthew J. Rizzolo*
James R. Batchelder
ROPES & GRAY LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303
Tel: 650-617-4000

Douglas H. Hallward-Driemeier
Matthew J. Rizzolo
Kathryn Thornton
ROPES & GRAY LLP
2099 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel: 202-508-4600

Evan Gourvitz
Michael Morales
Meredith Cox
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
Tel: 212-596-9000

*Counsel for Appellant Teradyne, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**  24-239

I am the attorney or self-represented party.

**This brief contains**  6,974  **words,** including  0  words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated _____.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**  s/ Matthew J. Rizzolo  **Date**  8/7/2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                                                 *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

On August 7, 2024, the undersigned caused the foregoing document to be filed electronically by using the Court's CM/ECF system. All parties are represented by registered CM/ECF users and will be served by the appellate CM/ECF system.

Respectfully submitted,

*s/ Matthew J. Rizzolo*
Matthew J. Rizzolo

*Counsel for Appellant Teradyne, Inc.*